JOHN HALDEN v. SAMUEL F. CRAFTS, HENRY STEVENS and JOHN TUCKER.

The factor of a foreign principal is not liable to an action for the proceeds of sales made by him for account of his principal on commission, until a demand, by the principal, or instructions to remit.

The statute of limitations will not begin to run against the claim of the consignor for such proceeds, until he demands payment, or instructs the factor to remit.

How far a course of previous dealing between the parties might be equivalent to such demand or instructions, as establishing an implied agreement to do in a particular case what had theretofore been usual ?  Quere.

The plaintiff, in an action for money collected by the factor, will not be precluded, in respect of the statute of limitations, by a statement in the complaint, that the gross proceeds of sales and the charges left a certain balance due on a day which is in fact more than six years before suit brought.

Where account sales were rendered, dated November, 1838, and the consignor was entitled to demand the proceeds in May, 1839, and the latter sued therefor in November, 1850 ; held, that if a demand can in any event be presumed from lapse of time, the presumption was not sufficient to call for the application of the statute of limitations to this case.

The running of the statute of limitations is not suspended as to one joint debtor, by his absence from the state, while his co-debtors remain therein.

THIS action was instituted in November, 1850, to recover the proceeds of consignments. In 1838, the plaintiff, a resident of Great Britain, consigned to the defendants, who were merchants and copartners in New York, merchandise, for sale on commission, the consignees guaranteeing the sales.

At various times, between the months of June and December, 1838, the defendants sold the goods on a credit of eight months, and rendered an account sales—at what time did not appear—dated November 17, 1838.

The complaint contained the following averment: " That the purchase money of all said goods was due and owing on the fifth day of May, 1839, and that such purchase money amounted in the whole to $4,348 40. That the charges of the defendants against the plaintiff, for the commissions and charges of every nature attending the receipt and sales of said goods by the defendants, amount to the sum of $412 12, leaving a balance due from the defendants to the plaintiff, on the said fifth day of May, 1839, of $3,936 28." Also, " That payment of said sum of $3,936 28 has been demanded of said defendants since said fifth day of May, 1839, and by them refused." The answer was *actio non accrevit infra sex annos.*

It appeared that Tucker, one of the defendants, had been a resident of Philadelphia from 1839 to 1850.

There was no proof that the plaintiff had ever demanded the proceeds in question, nor that he had ever instructed the defendants to remit.

The cause was tried before INGRAHAM, FIRST J., without a jury.

At the close of the testimony, the defendants' counsel moved that the complaint be dismissed, or a verdict and judgment rendered for the defendants, on the following grounds:

1. The demand in suit became due and payable on the fifth day of May, 1839, and the plaintiff had then a perfect and vested right of action. The suit was not commenced until the 22d day of November, 1850, more than eleven and a half

years afterwards, as appears from the date of the summons given in evidence. The cause of action is, therefore, barred by the statute of limitations.

2. This is equally so if the demand in suit is to be considered as a debt payable on demand. The statute begins to run from the date of the accruing of the right to demand payment, without reference to the time when a demand is actually made.

3. If a demand, after the 5th of May, 1839, was necessary in this case, to set the statute in motion, the law presumes it to have been made within a reasonable time after that date. Five and a half years is more than a reasonable time for making such a demand. And if made at any time within that period, the claim is still barred.

4. By the statements in his complaint the plaintiff has admitted that the cause of action accrued and became perfect on the fifth of May, 1839, and has claimed as upon a cause of action accruing at that time, and he is bound thereby.

5. The residence out of the state of Mr. Tucker, one of the defendants, during a portion of the interval, from the year 1839 to the year 1850, did not prevent or suspend the running of the statute, the other defendants having remained in the state.

6. Much less did it prevent or suspend the running of the statute, the defendant, Tucker, being shown by the testimony to have been frequently within the state during the term of his residence in Philadelphia.

The court denied the motion, and afterwards rendered a final decision in the cause, as follows:

1. That the cause of action did not accrue to the plaintiff until he demanded payment of the debt, or gave instructions to remit.

2. That the plaintiff is not concluded by the statements in his complaint as to the time when the cause of action accrued.

3. That there is no legal presumption in this case of

demand having been made more than six years before the commencement of the action.

4. That as no demand is shown to have been made, and no instruction to remit for more than six years before the commencement of the action, and no course of dealing shown, which made it the duty of defendants to remit without instructions, the claim of the plaintiff is not barred by the statute of limitations.

5. That the plaintiff can only recover the principal of his debt, with interest from the commencement of the action.

6. That the running of the statute of limitations was not suspended as to the defendant, John Tucker, by his departure from and residence out of the state of New York, after the cause of action had accrued.

7. That the running of the statute of limitations was not and could not be suspended as to the defendant, John Tucker, unless the same was also suspended as to the other defendants.

8. That the plaintiff was not entitled to judgment against the defendants, or against the defendant, John Tucker, for the whole sum claimed, to wit, for the sum of $3,936 28, with interest from the 5th May, 1839, but only to that sum, with interest from the commencement of the action.

The defendants excepted to the first four propositions, and the plaintiff to the last four. And each party appealed to the general term.

*Jeremiah Larocque*, for the defendants, cited *Lillie* v. *Hoyt*, 5 Hill, 395, and cases cited; *Stafford* v. *Richardson*, 15 Wend. 302; *Wenman* v. *The Mohawk Ins. Co.*, 13 Wend. 267; *Collins* v. *Denning*, 12 Mod. R. 444; 1 Saunders' R. 33, n. 2; 1 Chitty's Pleadings, 329, Am. ed. of 1840; *Darnell's Ex'rs* v. *Magruder*, 1 Harr. & Gill. 439; Chitty on Bills, 374; Bull. N. P. 151; *Bank of Utica* v. *Childs*, 6 Cowen, 238; *Rumball* v. *Ball*, 10 Mod. R. 38; *Coffin* v. *Coffin*, 7 Greenleaf's R. 298; *Dale* v. *Birch*, 3 Camp. 347; *Dygert* ads. *Crane*, 1 Wend. 534; *Brewster* v. *Van Ness*, 18

Johns. R. 133; Anon. 15 Vin. Abr. 103; *Varden* v. *Parker*, 2 Esp. R. 710; Chitty on Bills, 608, and note w. 8th Am. ed; *Cooley* v. *Betts*, 24 Wend. 203; *Losee* v. *Dunkin*, 7 Johns. 70, and note; *Furman* v. *Haskin*, 2 Caines, 369; *Lorrins* v. *Pulver*, 9 Johns. 244; *Sandford* v. *Mickles*, 4 ib. 224; *Hendricks* v. *Judah*, 1 ib. 319; *Brown* v. *Delafield*, 1 Denio, 445; *Ford* v. *Babcock*, 2 Sand. S. C. R. 518; *Cole* v. *Jesup*, 10 Howard's Pr. R. 515, in the Court of Appeals.

*Augustus F. Smith*, for the plaintiff, cited *Cooley* v. *Betts*, 24 Wend. 203; *Topham* v. *Braddick*, 1 Taunt. 572; *Lillie* v. *Hoyt*, 5 Hill, 395; *Baird* v. *Walker*, 12 Barb. S. C. R. 298; *Hays* v. *Stone*, 8 Hill, 128–131; *Ferris* v. *Paris*, 10 J. R. 285; *Bruen* v. *Bokee*, 4 Denio, 56; *Wenman* v. *The Mohawk Insurance Co.*, 13 Wend. 267; *Collins* v. *Denning*, 3 Salk. R. 227; *Dygert* v. *Crane*, 1 Wend. 534; *Burroughs* v. *Bloomer*, 5 Denio, 532; *Randall* v. *Wilkes*, 4 ib. 577; *Didier* v. *Davison*, 2 Barb. Ch. R. 477–487; *Fannin* v. *Anderson*, 7 Ad. & El. N. S. 811; E. C. L. R. 53; S. C. 9 Lon. Ju. 969, where the statute of Anne is set forth, and other cases.

By THE COURT. WOODRUFF, J.—The plaintiff in this action, carrying on business in the kingdom of Great Britain, in the year 1838 consigned various goods to the defendants, then carrying on business as copartners in the city of New York, for sale, upon commission, for the plaintiff's account, they (the defendants) guaranteeing the sales. The goods were received by the defendants, sold by them in the course of that year, upon such terms as to credit as entitled the plaintiffs to demand and receive payment of the proceeds on the 5th of May, 1839.

On the 22d day of November, 1850, the plaintiff commenced this action to recover the proceeds of the goods, and it was averred in the complaint, and not denied in the answer, that after the 5th day of May, 1839, and before the com-

mencement of the suit, the plaintiff demanded payment of such proceeds from the defendants.

The defence relied upon was the statute of limitations.

It appeared on the trial that at some time after the sale of the goods, the defendants rendered to the plaintiff an account of the sales and of the charges appertaining thereto, the balance whereof was therein stated as " $3,936 28, due April 25, say May 5." When this account was rendered did not appear, except so far as it might be inferred from the circumstances that it was in the plaintiff's possession, and was produced upon the requirement of the defendants at the trial, and bore date New York, November 17th, 1838.

The defendants on the trial insisted, and now on this appeal insist, that the plaintiff's claim is barred by the statute of limitations, while the plaintiff insists that no cause of action arose in the plaintiff's favor until after demand of payment by him, or after instructions to remit, and that the statute of limitations did not begin to run until such demand made or instructions given. This presents the sole question raised by the defendants' appeal.

After a careful examination of the authorities referred to by the counsel, I am constrained to say that this court is bound to regard the rule as settled in this state, that the factor of a foreign principal is not liable to an action for the proceeds of sales made by him for account of his principal on commission, until a demand made by the principal, or instructions to remit.

A course of previous dealing between the parties might be equivalent to such demand or instructions, as establishing an implied agreement to do in the particular case just what had theretofore been usual and customary in such previous dealings; but in the absence of any such circumstances, I apprehend it is settled in this state that such factor is not liable to an action until the foreign principal has put him in default.

The case of *Ferris* v. *Paris*, 10 J. R. 285, is directly to this point. The court there say in terms, not only that the

factors were bound to pursue the directions of their principal, but after apprising him of the sale, to wait for those directions ; and until default on their part they were not liable to an action.

In *Leverick* v. *Meigs*, 1 Cow. 646, the duty of a factor and the nature and effect of a commission *del credere*, are considered by the court at great length ; and the rule that a factor may wait for instructions as to the mode of remitting net proceeds, and that he is not liable to an action until a default on his part in remitting or paying the proceeds, according to the orders of his principal, is stated. And in that case, also, the circumstance that the factor sells under a *del credere* commission, guaranteeing the sales, is considered, and shown not to affect his relation to his principal in any respect, save that he is held to an unqualified undertaking that the purchaser of the goods shall pay for the goods according to the terms of sale. The case of *Taylor* v. *Bates*, 5 Cow. 379, re-affirms the principle.

The subsequent cases re-affirm the doctrine in terms entirely explicit. In *Cooley* v. *Betts*, 24 Wend. 203, the very point decided was, that an action would not lie against a factor or agent, to whom goods are sent to be sold at auction, for the proceeds thereof, without a demand of such proceeds, or instructions to remit. And, in that case, while the opinion seems to admit a doubt whether an action for not accounting might not lie, without a demand of an account of the sales, it affirms that an action for the money cannot be sustained without proof of a demand, or instructions. In *Lillie* v. *Hoyt*, 5 Hill, 395, though a mere collecting agent was held liable without a demand, it is regarded as settled that a foreign factor is not. In *Hays* v. *Stone*, 8 Hill, 128, it is again said of factors in New York, who received moneys for a principal residing in Liverpool, " no cause of action arose against them by the mere receipt of the money, but a demand and refusal to pay, or some misapplication of the money, or some violation of orders was necessary to be shown, before any right of action would be established in favor of the plain-

tiff;" and in *Baird* v. *Walker*, 12 Barb. 300, the same rule is distinctly affirmed.

The justice of the rule is very apparent, when another principle is taken into view, viz., that if the factor undertakes to remit, when no direction or authority has been given, the remittance is at his own risk; and hence the rule, stated in one of the cases above mentioned, and also in *Heubach* v. *Mollman*, 2 Duer, 252, that it is his duty, giving early information of the receipt of the money or sale of the goods, to retain the proceeds, subject to the order of his principal, unless he has been directed or authorized to remit them.

This point I must therefore regard as settled, that until a demand made on the defendants, or until instructions were given to remit, the plaintiff in this case could not maintain an action for the proceeds of the goods.

The next step in the present inquiry, viz., when did the statute of limitations begin to run in favor of the defendants? seems to me answered in the very terms in which the rule is above stated. The cause of action cannot be said to accrue to the plaintiff until he be in a situation in which, if he bring suit, his action may be maintained. And this view is in like manner recognized by the cases. In *Lillie* v. *Hoyt*, it is said, that where the party is to be protected until demand, "it follows that he ought not to be allowed the benefit of the statute running till a demand be made." I can discover no ground for saying that a plaintiff, who has no cause of action, is within a statute bar, only applying six years after the cause of action has accrued. The very point was determined in conformity with this view of the subject, in *Baird* v. *Walker*, 12 Barb. 300, and the case cited in many of the cases above mentioned. *Topham* v. *Braddick*, 1 Taunt. 571, is to the same effect.

It is argued that it contravenes the spirit of the statute to make its operation depend upon the will of the plaintiff, and to enable him, by omitting to make the demand, to preserve the right to claim the money for an indefinite number of

years. The answer is plainly this : When parties place themselves in such legal relations to each other, voluntarily, neither can complain. The hardship upon the defendants, if there be any hardship in the matter, is no greater than in any case in which an actual demand is necessary, by the very terms of the agreement of the parties. Or, to take an analogous case, of an agreement to pay a person so much money in thirty days after his return from Europe to New York, if he do not return until four years have passed, would it be claimed that he must sue within two years, or two years and thirty days thereafter? It could not, I think, be successfully insisted, in such case, that the statute began to run until thirty days after such return.

Unless we can go to the length of saying, that whenever the plaintiff had it in his power to perfect his right of action by performing, on his part, the condition upon which it will accrue to him, then the statute begins to run from the date of the promise to which the condition is annexed, we cannot say that the statute in this case began to run until demand made.

I know of no rule of construction, and of no authority, which will warrant such an interpretation of the statute ; and in the face of the authorities, to which I have referred, it is proper that I should, if I thought otherwise, so far defer to those authorities as to leave it to the court of last resort to adopt such a construction, if it be made to appear the proper view of the statute.

Doubtless the factor has it also in his power to terminate his own responsibility, and require his principal to receive the balance due ; but it is not claimed that the defendants here have done any thing of that sort, or called upon the plaintiff to give instructions for remitting, or otherwise disposing of the balance in the defendants' hands. The debtor may not be bound to continue to be the depositary of his principal's money for an indefinite time, but he must do some act, on his part, to terminate his responsibility. The statute alone will not protect him.

Halden *v.* Crafts.

I fully concur in the opinion at special term, that the language of the present complaint, in stating the gross proceeds of sales, and then the charges and expenses as " leaving a balance due, on the 5th May, 1838, of $3,936 28," does not alter the result in this case, not only because that was a statement of the result of deducting the amount of charges and expenses from the gross proceeds, and stating the mere legal inference therefrom, but because, although due, this balance was not (for the reasons above given) payable until after demand.

It is said that, from the lapse of time, a demand may be presumed; and such a suggestion is made in some of the cases. If this be conceded, at what period will the demand be presumed to have been made? No criterion is suggested beyond the words, " a great lapse of time." Surely such a presumption of demand would not exist until the six years expired; and if the statute does not begin to run until the time arrives at which it is presumed the demand was made, this would not aid the defendant in this case; for even in this view the plaintiff may insist that the presumed demand was on the last day of the sixth year with as much propriety as the defendant may presume that it was made at an earlier day. My conclusion is, that there is not in this case any legal presumption that a demand was made more than six years before the action was commenced.

The result is, that there is no ground for reversing the judgment upon the appeal of the defendants herein, but that it should be affirmed.

In relation to the appeal brought by the plaintiff herein, it is sufficient to say that, though brought to argument in connection with the defendants' appeal, it was so done upon the understanding that the court, if they deemed the defendants' appeal without sufficient foundation, should affirm the judgment. Had it been otherwise, I should, I think, have felt bound, by the case of *Brown* v. *Delafield*, 1 Denio, 445, and the reasons there given, to affirm the judgment.

Judgment affirmed.